## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE APELACIONES
## PANEL ESPECIAL

| | | |
|---|---|---|
| **UNITED PARCEL SERVICES (UPS)**<br><br>Peticionarios<br><br>v.<br><br>**UNIÓN DE TRONQUISTAS DE PUERTO RICO LOCAL 901**<br><br>Recurridos | KLCE202301290 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.: **SJ2022CV10681**<br><br>Sobre: Impugnación o Confirmación de Laudo |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Boria Vizcarrondo[1].

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 11 de abril de 2024.

Comparece ante nos la parte peticionaria, United Parcel Services (en adelante, UPS o Patrono) mediante un recurso de *Certiorari*, y nos solicita que revisemos una Sentencia emitida el 9 de junio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), en virtud de la cual se declaró No Ha Lugar a una demanda sobre impugnación de laudo de arbitraje.

Por los fundamentos que expondremos a continuación, resolvemos expedir y confirmar la Sentencia recurrida.

### I.

La presente controversia tiene su génesis el 24 de enero de 2019 cuando el Patrono despidió al señor Oscar A. Rivera González (señor Rivera González), quien fungía como chofer, por violación a la Sección 3 del Artículo 11, la Sección 4 del Artículo 34 y la Sección

---

[1] Mediante la Orden Administrativa OATA-2024-021 de 2 de febrero de 2024, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución de la Hon. Grisel M. Santiago Calderón.

3h del Artículo 27 del Convenio Colectivo, suscrito entre las partes. La relación de las partes se encontraba regulada por un Convenio Colectivo cuyo periodo de vigencia se extendía desde el 1 de agosto de 2018 hasta el 31 de julio de 2023.

Al momento del despido, el señor Rivera González se encontraba en recuperación de una operación. El Patrono le notificó sobre su despido a través de una carta enviada por correo certificado con acuse de recibo. Por su parte, la Unión de Tronquistas de Puerto Rico, como representante del empleado, también fue notificada por correo certificado, pero previamente se le había notificado por la vía telefónica. Sin embargo, surge del expediente ante nuestra consideración que las partes no se reunieron.

Así las cosas, el 21 de febrero de 2019, la Unión de Tronquistas de Puerto Rico (Unión), en representación del empleado, sometió una querella ante el supervisor, señor Ricardo Morales, por alegado despido injustificado. Trabada la controversia, la Unión solicitó la intervención del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico, mediante una solicitud para la designación de un árbitro.

La audiencia de arbitraje se celebró el 21 de diciembre de 2021. Las partes sometieron el siguiente Acuerdo de Sumisión:

> "**Determinar conforme a derecho**, al convenio colectivo y la prueba presentada, si la querella presentada por el Sr. Oscar Rivera es o no arbitrable procesalmente. De determinarse que es arbitrable, que el Honorable Árbitro señale una vista posterior para ver el caso en los méritos." (Énfasis nuestro).

El Patrono alegó que el empleado no cumplió el primer paso del procedimiento establecido en el Convenio Colectivo para el procesamiento de querellas, ya que luego del despido, nunca discutió el mismo con su supervisor inmediato ni cumplió con el segundo paso, que requería que el empleado dirigiera una

comunicación escrita al delegado de la Unión luego de haberse reunido con su supervisor inmediato y dialogado lo relacionado a su despido.

Por su parte, la Unión alegó, entre otras cosas, que el Patrono creó las condiciones para que no se pudiera cumplir con el primer paso de notificar al supervisor directo porque quién notificó la carta de despido fue el señor Luis Olivero, supervisor laboral y de Recursos Humanos, y no el supervisor directo del empleado.

El 16 de noviembre de 2022, el Árbitro determinó que la querella era arbitrable. Surge del Laudo que para que la Unión pudiera prevalecer en su alegación sobre que UPS renunció a su derecho a levantar la defensa de arbitrabilidad procesal, debió probar la existencia de una renuncia expresa o que estos realizaron actos afirmativos que apuntaran en la dirección de que abandonó su derecho a levantar la referida defensa. En síntesis, que UPS no renunció a, ni estaba impedida de plantear ante el árbitro, la defensa de no arbitrabilidad, en su modalidad procesal, porque lo hizo oportunamente, antes de entrar en los méritos de la querella.

Por otro lado, en cuanto a si la querella del señor Rivera González era arbitrable, discutió sobre la importancia del arbitraje como parte de la negociación colectiva y como elemento fundamental de la política pública. *Ceferino Pérez v. AFF,* 87 DPR 118 (1963). Resaltó la importancia de que las partes cumplan estrictamente con las disposiciones contractuales sobre procesamiento de querellas. Para que de esa forma se le impartiera aprobación a lo que constituye la voluntad de las partes traducida en la redacción de la disposición contractual sobre procedimiento de quejas, agravios y arbitraje.

Así las cosas, el 7 de diciembre de 2022, el Patrono radicó ante el TPI una Revisión de Laudo.

Luego de examinar la posición de ambas partes, el TPI concluyó que no surgía inequívocamente que hubo un incumplimiento por parte de la Unión y que el Patrono tampoco pudo demostrar la existencia de alguna de las excepciones a la revisión judicial, como por ejemplo: impugnación al laudo por no ser conforme al derecho vigente, violación a la política pública, fraude, conducta impropia, violación al debido proceso de ley, falta de jurisdicción u omisión de resolver las cuestiones en disputa.

Como consecuencia de lo anterior, otorgó deferencia al procedimiento de arbitraje y declaró No Ha Lugar el recurso de impugnación del laudo.[2]

Insatisfecho con la determinación del Tribunal, el 23 de junio de 2023, el Patrono solicitó reconsideración,[3] y tras varios trámites procesales, el 19 de octubre de 2023, el TPI declaró No Ha Lugar.[4]

El Patrono, inconforme con tal determinación, presentó ante esta Curia una Petición de Certiorari en la cual invocó la comisión del siguiente error:

A. **ERR[Ó] EL TPI AL NO REVOCAR EL LAUDO EMITIDO POR EL [Á]RBITRO DEL NCA TODA VEZ QUE EL MISMO ES NULO POR SER CONTRARIO A DERECHO Y EN VIOLACI[Ó]N A LA POL[Í]TICA P[Ú]BLICA ESTABLECIDA.**

Luego de revisar los documentos que obran en autos, estamos en posición de resolver, primero delimitando el trasfondo normativo aplicable.

## II.

### A.

El auto de *certiorari* es el vehículo procesal extraordinario mediante el cual un tribunal de mayor jerarquía puede corregir un error de derecho cometido por un tribunal inferior. *IG Builders et al.*

---

[2] *Íd.*, Anejo 370
[3] *Íd.*, Anejo 378
[4] *Íd.*, Anejo 393. Archivada y notificada en autos el 20 de octubre de 2023.

*v. BBVAPR,* 185 DPR 307, 337-338 (2012). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *Íd.* De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

En específico, la Regla 52.1, *supra,* establece que este foro apelativo expedirá el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas cuando se recurre de una resolución u orden bajo las Reglas 56 (Remedios Provisionales) y 57 (Injunction) de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil,* 6a ed. rev., San Juan, Lexis Nexis de Puerto Rico, 2017, pág. 533. Una moción de carácter dispositivo es la petición que se hace para que el tribunal disponga de forma final del pleito, algunas de sus causas de acción o la responsabilidad de una parte. Sin embargo, y por excepción, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios evidenciarios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

De ordinario, quien presenta un recurso de *certiorari* pretende la revisión de asuntos interlocutorios que han sido dispuestos por el foro de instancia en el transcurso y manejo del caso. Distinto al recurso de apelación, ante un recurso de *certiorari,* el tribunal tiene discreción para atender el asunto planteado. *Rivera Figueroa v. Joe's*

*European Shop*, 183 DPR 580, 596 (2011); *Pueblo v. Díaz De León*, 176 DPR 913 (2009). Esta discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). No significa poder actuar en una forma u otra haciendo abstracción del resto del Derecho, pues ello ciertamente constituiría un abuso de discreción. *Íd.*; *Torres v. Junta de Ingenieros*, 161 DPR 696 (2004).

Para poder ejercitar debidamente nuestra facultad revisora sobre un caso, debemos evaluar si a la luz de los criterios enumerados en la Regla 40 del Reglamento del Tribunal de Apelaciones, (4 LPRA Ap. XXII-B), se justificaría la intervención. Estos son los siguientes:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
> B. Si la situación de hechos planteada es la más indicada para analizar el problema.
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
> D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En conjunto, los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, y de la Regla 40 del Tribunal de Apelaciones, *supra*, sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Por otro lado, la Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.32(D), en lo pertinente, dispone:

"[e]l recurso de *certiorari* para revisar cualquier otra resolución u orden o sentencia final al revisar un laudo de arbitraje del Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud dentro de los treinta (30) días siguientes a la fecha de archivo en autos de una copia de la notificación de la resolución u orden recurrida"**.**

## B.

En Puerto Rico, existe una clara política pública a favor del arbitraje como método alterno para la solución de disputas. *Paine Webber v. Soc. de Gananciales*, 151 DPR 307, 312-313 (2000); *U.C.P.R. v. Triangle Engineering Corp.*, 136 DPR 133 (1994). Como corolario de dicha política pública, nuestra jurisprudencia ha reiterado que la interpretación que realiza el Árbitro de lo acordado ha de recibir de los foros revisores una gran deferencia. *J.R.T. v. Junta Adm. de los Muelles Municipales de Ponce*, 122 DPR 318, 325 (1988).

El mecanismo del laudo promueve la resolución de querellas y controversias que se suscitan dentro del marco obrero patronal, habiéndose reconocido que el arbitraje pactado en el convenio colectivo constituye una herramienta ideal para fortalecer la negociación colectiva. *Id.* Su finalidad es promover la paz y la estabilidad en el campo obrero patronal, por lo que su validez y eficacia debe ser siempre objeto de gran deferencia por parte de los tribunales por constituir el trámite ideal para resolver disputas obrero-patronales de modo rápido, cómodo y menos costoso. *J.R.T. v. Hato Rey Psychiatric Hospital*, 119 DPR 62 (1987).

El Tribunal Supremo ha establecido que ante un convenio de arbitraje lo más prudente es la abstención judicial, aunque la intervención no esté vedada. *C.F.S.E. v. Unión de Médicos*, 170 DPR 443 (2007); *U.C.P.R. v. Triangle Engineering Corp., supra.* Conforme a ello, cuando se acuerda el uso del arbitraje como mecanismo para

ajustar las controversias, se crea un foro sustituto a los tribunales de justicia, cuya interpretación merece gran deferencia. *C.F.S.E. v. Unión de Médicos,* 170 DPR 443; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce, supra.* A tono con tal normativa jurídica, nuestro más alto foro ha establecido que la revisión de los laudos de arbitraje se circunscribe a la determinación de la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia. *C.F.S.E. v. Unión de Médicos, supra.*

Nótese que el convenio colectivo representa la ley entre las partes, siempre y cuando sus disposiciones no estén en riña con la ley, la moral y el orden público. Art. 1207, Código Civil, 31 LPRA sec. 3372; *Pérez v. Autoridad de Fuentes Fluviales,* 87 DPR 118, 122 (1983). Consecuentemente, nuestro ordenamiento favorece la finalidad de un laudo pues nace de la sumisión voluntaria de las partes, que, por convenio deciden sustituir al tribunal por un árbitro. *Junta de Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.,* 69 DPR 782, 800 (1949).

La autoridad del árbitro para atender una controversia queda definida por el lenguaje del convenio colectivo o por el acuerdo de sumisión sometido por las partes. *López v. Destilería Serrallés,* 90 DPR 245, 256 (1964). Al respecto, en el campo laboral, el concepto de arbitrabilidad se refiere al "derecho del quejoso a que su agravio lo determine el árbitro" así como cualquier impedimento que se interponga en el disfrute de ese derecho. D. Fernández Quiñones, *El arbitraje obrero-patronal,* 1ª ed. rev., Forum, 2000, sec. 7.1, pág. 377. La arbitrabilidad tiene dos vertientes la sustantiva y la procesal. En la arbitrabilidad sustantiva se evalúa si las partes establecieron en el convenio colectivo que la controversia o el agravio se someta ante un árbitro. Por su parte, cuando la controversia se relaciona con el procedimiento o mecanismo establecido en el

convenio para atender un agravio o controversia, nos encontramos ante un asunto de arbitrabilidad procesal. Fernández Quiñones, op. cit., sec. 4.6B, pág. 236. Los asuntos de arbitrabilidad procesal son de la injerencia del árbitro.

En el caso seminal *John Wiley & Sons, Inc. v. Livingstone*, 376 U.S. 543 (1964), el Tribunal Supremo de Estados Unidos indicó que una vez se determina que, el agravio o controversia es arbitrable, el asunto de si éste se presentó dentro del término provisto en el acuerdo es de la incumbencia del árbitro. Se indicó: "Once it is determined ...that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. págs. 557-559.

Nuestro Tribunal Supremo ha resuelto que: "[t]oda vez que un laudo de arbitraje que es final u obligatorio para las partes pone fin a las controversias entre dichas partes sin intervención de las cortes excepto para ponerlo en vigor, tal laudo arbitral debe por sí solo, resolver definitivamente todas las cuestiones sometidas, sin necesidad de modificación o aclaración alguna, por las cortes". *J.R.T. v. Sindicato de Obreros Unidos del Sur de Puerto Rico,* 92 DPR 60, 67 (1965). El deber de las cortes es dejar el laudo tal cual lo encuentra y hacer que las partes lo cumplan más no interpretarlo. *Junta de Relaciones del Trabajo v. N.Y. & P.R. S/S Co., supra*; *López v. Destilería Serrallés, Inc., supra*; *J.R.T. v. Sindicato de Obreros Unidos del Sur de Puerto Rico, supra.* Ni siquiera en la revisión de un laudo se re litiga la controversia en un proceso civil ordinario, pues ello convertiría la labor del Árbitro en un ejercicio inútil y desvirtuaría la naturaleza del procedimiento de arbitraje laboral. *U.C.P.R. v. Triangle Engineering Corp., supra*; *World Films, Inc. v. Paramount Pict. Corp.,* 125 DPR 352 (1990).

Ahora bien, cuando las partes acuerdan que la controversia existente que han sometido al Árbitro deberá resolverse conforme a derecho, el tribunal tiene la facultad de revisar los méritos jurídicos de la determinación. *U.C.P.R. v. Triangle Engineering Corp., supra*, pág. 143. Así, el laudo estará sujeto a revisión judicial cuando las partes hayan convenido en que la controversia sometida al Árbitro sea resuelta conforme al derecho aplicable. En tal supuesto, la revisión judicial de los laudos de arbitraje es análoga a la revisión judicial de las decisiones administrativas. *C.F.S.E. v. Unión de Médicos, supra; Condado Plaza v. Asoc. Emp. Casinos P.R.,* 149 DPR 347 (1999); *Rivera v. Dir. Adm. Trib.,* 144 DPR 808 (1998). En efecto, cuando un convenio colectivo dispone que los asuntos sometidos a arbitraje serán resueltos conforme a derecho, el Árbitro no puede ignorar las normas de derecho sustantivo en el campo del derecho laboral y debe resolver las controversias a tenor con las doctrinas legales prevalecientes. *C.F.S.E. v. Unión de Médicos, supra.*

Nuestro Tribunal Supremo ha resuelto que los acuerdos de sumisión no son superfluos, ineficaces o carentes de fuerza vinculante. *Rivera v. Samaritano & Co. Inc.,* 108 DPR 604, 606 (1979). El convenio de sumisión es el que confiere la facultad decisional al árbitro y delimita su esfera de acción; siendo nulo el laudo si se excede de los poderes delegados en dicho convenio de sumisión. *Íd.*, pág. 607. Dentro del ejercicio de la voluntad de las partes libremente expresada en un pacto de sumisión, estas pueden acordar que el árbitro resuelva conforme al derecho. "Las partes tienen amplia libertad para incorporar en el convenio de sumisión las cualificaciones que consideren propias al caso y el árbitro viene obligado a darles cumplimiento". *Íd.*, pág. 608. Cuando la sumisión dispone esto, "el tribunal tiene la facultad para revisar los méritos jurídicos del laudo". *Íd.*

No obstante, el tribunal no debe inclinarse fácilmente a decretar la nulidad de un laudo, salvo que, en efecto, éste no sea conforme a derecho. La discrepancia de criterio con el laudo no justifica intervención judicial porque destruye los propósitos fundamentales del arbitraje. *U.C.P.R. v. Triangle Engineering Corp.*, *supra.*

De ordinario, un laudo de arbitraje en el campo laboral no se podrá anular por la existencia de meros errores de criterio, ya sean estos en cuanto a la ley o en cuanto a los hechos, salvo que se demuestre la existencia de fraude, conducta impropia del árbitro, falta de debido proceso de ley a las partes, falta de jurisdicción del árbitro, omisión de resolver todas las cuestiones en disputa o violación a la política pública. *Aquino González v. A.E.E.L.A.,* 182 DPR 1, 26 (2011); *J.R.T. v. Vigilantes, Inc.,* 125 DPR 581, 592-593 (1990); *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 DPR 348, 352-353 (1985). Ausentes estas causas de impugnación, queda impuesta la norma de autolimitación judicial. *Aquino González v. A.E.E.L.A., supra*, pág. 26. No obstante, en *United Steelworkers v. Paula Shoe Co., Inc.,* 93 DPR 661, 667 (1966), el Tribunal Supremo resolvió que ningún error de hecho o de derecho del árbitro será motivo de impugnación, excepto cuando se incluya en el acuerdo de sumisión que el árbitro deberá decidir conforme a derecho, entonces ese árbitro deberá seguir las normas de derecho y rendir el laudo de acuerdo con las doctrinas legales prevalecientes.

Esto significa que las decisiones del árbitro contrarias a las leyes y "normas interpretativas de derecho sustantivo emitidas por los Tribunales Supremos de Estados Unidos y Puerto Rico en el campo de derecho laboral" invalidan jurídicamente el laudo cuando las partes han acordado que el laudo sea conforme a derecho. *J.R.T. v. Hato Rey Psychiatric Hosp.*, *supra*, pág. 68. De esta forma, las decisiones de un árbitro que sean contrarias a las leyes y a las

normas interpretativas del derecho sustantivo en el campo del derecho laboral anulan un laudo cuando las partes han acordado que sea conforme a derecho. *J.R.T. v. Hato Rey Psychiatric Hosp., supra.*

Acentuamos que en lo que respecta al peso de la prueba, el Tribunal Supremo de Puerto Rico ha indicado que, al igual que los casos ante los tribunales, "la parte que sostiene la afirmativa de la cuestión en controversia deberá producir prueba suficiente para probar los hechos esenciales de su reclamación". *J.R.T. v. Hato Rey Psychiatric Hospital*, supra, págs. 70-71. Así, "[e]l peso de la prueba descansa en la parte contra quien el árbitro fallaría si no se presentara evidencia por ninguna de las partes". Íd. En el citado caso, el Tribunal Supremo puntualizó lo siguiente:

> En los casos de despido, los árbitros han sostenido, casi invariablemente, que el peso de probar la "justa causa" descansa en el patrono debido a que la justificación es una defensa afirmativa. En todos los casos de arbitraje, por lo tanto, donde ya se ha impuesto una penalidad industrial severa y extrema-el despido-es el patrono quien deberá probar ante el árbitro que el mismo fue justificado. Íd., pág. 71.

Como corolario de lo anterior, la cuestión del *quantum* de prueba requerido en el procedimiento de arbitraje para la adjudicación de controversias relacionadas con casos disciplinarios o casos de despido no ha sido resuelta por el Tribunal Supremo.[5] Sin embargo, los árbitros han utilizado los siguientes estándares de prueba: preponderancia de la prueba, evidencia clara y convincente y prueba más allá de duda razonable. Elkouri & Elkouri, *How Arbitration Works*, 6ta ed., Washington, BNA Books, 2003, págs. 949-950. Así, en los casos ordinarios de disciplina y de despidos,[6] los

---

[5] Según las Reglas de Evidencia, en los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición, al contrario. Regla 110 (f) de Evidencia, 32 LPRA Ap. VI, Regla 110 (f).

[6] En el ámbito laboral, en los casos judiciales instados al amparo de la Ley Núm. 80 de 30 de junio de 1976, conocida como *Ley de Indemnización por Despido sin Justa Causa*, 29 LPRA sec. 185a *et seq.*, cuando el patrono invoca como defensa afirmativa en su alegación responsiva que medió justa causa para el despido del empleado, este tiene que probar, mediante preponderancia de la prueba, que el despido estuvo justificado. Rivera Figueroa v. The Fuller Brush Co., 180 DPR 894, 906-907

árbitros han aplicado el estándar de preponderancia de la prueba. Íd.

Analizada la controversia bajo el marco doctrinal previamente esbozado, nos hallamos en posición de resolver.

**III.**

En su único señalamiento de error, el Patrono planteó que el TPI incidió al no revocar el laudo emitido por el árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos del Gobierno de Puerto Rico. Reiteró que, por el contrario, el laudo es nulo por ser contrario a derecho y en violación a la política pública establecida.

En primer lugar, destacamos la política pública existente en Puerto Rico a favor del arbitraje como método alterno para la solución de disputas. El arbitraje tiene el efecto dual de promover la resolución de disputas laborales dentro del marco obrero patronal, proceso rápido, cómodo y menos costoso, y reducir la carga de los tribunales. Este mecanismo también fortalece la negociación colectiva. Tanto la Asamblea Legislativa como los tribunales le otorgan gran deferencia a las determinaciones que emite un Árbitro como consecuencia de este proceso.

A la misma vez, los convenios colectivos entre los patronos y obreros representan la ley entre las partes. Es dentro del marco del convenio que los árbitros ejercen su autoridad para atender una controversia.

En este caso, existía un convenio colectivo cuya vigencia era desde el 1 de agosto de 2018 hasta el 31 de julio de 2023. Conforme a dicho convenio las decisiones de un árbitro eran finales y firmes.

En el caso de marras, el Convenio Colectivo exigía que quien tenía que notificar un despido era el supervisor directo del señor

---

(2011) Díaz v. Wyndham Hotel Corp., 155 DPR 364, 378 (2001); Secretario del Trabajo v. I.T.T., 108 DPR 536 (1979).

Rivera González. Sin embargo, quien le notificó el despido fue el señor Luis Olivero, supervisor laboral, pero no el supervisor directo que exigía el Convenio Colectivo. El manifiesto incumplimiento con lo convenido contraviene tanto lo pactado entre las partes como la política pública que se promueve en la relación obrero-patronal.

Finalmente, no podemos obviar el hecho de que las partes sometieron un Acuerdo de Sumisión válido, donde acordaron que el Árbitro debía determinar "conforme a derecho" si la querella presentada por el señor Rivera González era o no arbitrable. Esta cláusula abre la puerta a los tribunales para que revisemos que las determinaciones del Árbitro cumplan con las normativas legales y jurídicas vigentes.

Ante la revisión de laudos producto de arbitraje, los tribunales le debemos otorgar gran deferencia a las decisiones de los árbitros. En el caso ante nuestra consideración, no consideramos que exista fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resolviera todos los asuntos en controversia. Esto es, el Patrono o UPS no presentó prueba alguna para sustentar alguna de las excepciones para impugnar el laudo.

Al contrario, surge claramente de la determinación del Árbitro que éste consideró todos los aspectos del caso. Particularmente, somos de la opinión que el cumplimiento de la Unión o del señor Rivera González con las exigencias procesales del Convenio Colectivo sería un ejercicio fútil e inútil. Como señalan los tratadistas Frank y Edna A. Elkouri, "[n]or must the grievance procedure be exhausted **where to do so would be futile, or a useless and idle gesture**". Frank Elkouri, Edna A. Elkouri, *How Arbitration Works*, 2003, BNA, Washington D.C., pág. 268. (Énfasis nuestro). Por lo tanto, no hacía falta el agotamiento de remedios contractuales para que el Árbitro asumiera jurisdicción sobre la controversia.

Por lo tanto, confirmamos la *Sentencia* del TPI.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* y confirmamos la *Sentencia* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

La juez Barresi Ramos concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones